Wanamaker, J.
On motion to quash indictment.
The defendant, the General Fire Extinguisher Company, with others, was indicted by the grand jury of this county at the Sep *439 tember (1909) term of this court, under what is generally known as the Valentine anti-trust law of Ohio.
To this indictment the defendant, the General Fire Extinguisher Company filed its motion to quash, challenging the sufficiency of the indictment upon two grounds, to-wit: first, that Section 4 of said law does not include a “corporation”; second, that if it does include a corporation, said law is unconstitutional and void by reason of the fact of there being a discrimination against natural persons, who are subject to both fine and imprisonment, and in favor of artificial persons, who from the nature of the defendant could be subject to fine only.
Other objections are raised by the m'otion but were not urged by counsel for defendant, and, therefore, will not be considered in this opinion.
Counsel for the state as well as the defendant advise the court that this question is an original one in Ohio, so far never having been raised in any of the numerous criminal prosecutions under the Valentine anti-trust act; and that there is but little light in the adjudications of other states upon the questions herein raised. The importance of the question, as well as the diligence of counsel in the preparation of their briefs, justify the court in dealing at some length with the legal controversies involved.
Section 4 of this act (Rev. Stat., 4427-4) reads as follows:
“Any violation of either or all of the provisions of this act shall be and is hereby declared a conspiracy against trade, and any person who may become engaged in any such conspiracy or take part therein, or aid or advise in its commission, or who shall as principal, manager, director, agent, servant or employer, or in any other capacity, knowingly carry out any of the stipulations, purposes, prices, rates, or furnish any information to assist in carrying out such purposes, or orders thereunder or in pursuance thereof, shall be punished by a fine of not.less than fifty ($50) dollars nor more than five thousand ($5,000) dollars, or be imprisoned not less than six months nor more than one year, or by both such fine and imprisonment. Each day’s violation of this provision shall constitute a separate offense.”
Criminal statutes must be construed strictly. That strict construction, however, must not be arbitrary, artificial or so narrow *440 that the plain and obvious intendment of the statute is destroyed or diverted. It must be a reasonable construction, having due regard to the plain, ordinary and natural meaning and scope of the language employed in the act.
The word “corporation” does not appear in this Section 4; and, therefore, it is claimed that the Valentine act finds its parallel in construction in the case of State of Ohio v. Cincinnati Fertilizer Company, 24 O. S., 611. This was a prosecution brought under a statute to prevent nuisances, and that statute did not include the word “corporation,” but simply used the words “any person.” The Supreme Court of Ohio, in passing upon the exceptions taken by the prosecuting attorney to the ruling of the trial court, on a motion to quash the indictment upon the ground that the words “any person” did not include corporation, overruled the exception in the following language, to-wit:
‘ ‘ Criminal laws are to be construed strictly in favor of the accused. In its primary sense, the word ‘person’ means a natural person only. I know of no criminal statute in Ohio where the word has been held to apply to a corporation; nor do I know of any case where an attempt has before been made in this state to indict a corporation. We have no common law crimes in Ohio, and the whole theory and machinery of our administration of criminal law seems adapted only to the prosecution and punishment of natural persons. There is no provision of law for bringing an indicted party into court by summons, or otherwise than by actual arrest of his person. Under such a state of legislation and practice, the Legislature could not have intended,- in the use of the word ‘person,’ which is found in almost every criminal law of the state, to authorize an indictment against a corporation for this particular offense, without any special or further provision as to the liability of corporations, or the mode of proceeding against them.”
It will be noted that the Supreme Court of Ohio is here construing a criminal statute that does not, by its express terms, or by clear implication, include a “corporation.” At the time of the decision (1857) the corporation occupied such a small field in our industrial life that it is unlikely the Legislature' had any intention of including the artificial person within the term ‘ ‘ any *441 person”; but the language of the Supreme Court in this fertilizer case expressly recognized the right of the Legislature to include a “ eorp oration ” within the persons indictable under such a criminal -law, in the last sentence above quoted, -where it refers to “special or further provision as to liability of corporations, or the mode of proceeding against them.” In the Valentine act are there special or further provisions as to liability of corporations, or the mode of proceeding against them, clearly showing the intention of the Legislature?
The old English cases, as well as the earlier decisions in many of the states, held that the invisible, intangible, artificial person, without body and without soul, was not within the reahh of the criminal law, and therefore could not be indicted, prosecuted or punished. Having no soul, it could not be morally accountable; having no body, it could not be punished. But these artificial, technical and arbitrary distinctions have been swept away by the exigencies and necessities of the times. The later decisions, under English and American statutes, hold that a corporation is indictable and punishable, if the- plain and obvious provisions of the statute make it so.
The doctrine of criminal liability of corporations is aptiy stated in Bishop’s New Criminal Law, Volume 1, Section 417, in the following language:
“A corporation can not in its corporate capacity commit a crime by an act in the fullest sense ultra vires and contrary to its nature but within the sphere of its corporate capacity, and to an undefined extent beyond, whenever it assumes to act as a corporation it has the same capabilities of criminal intent and of act—in other words, of crime—as an individual man sustaining to. the thing the like relations. * * * If, for example, the invisible, intangible essence of air, which we term a corporation, can level mountains, fill up valleys, lay down iron tracks, and run railroad cars on them, it can intend to do it, and can act therein as well viciously as virtuously.”
Section 419. “Corporations can commit criminal nuisance the same as individuals. When the law casts upon any corporation an obligation of such a nature that the neglect of it would be indictable in an individual, the corporation neglecting it may be indicted.”
*442 Section 422. “Not every misfeasance which would be indictable in an individual is so in a corporation. It must be within, or not too far outside of, the corporate duty.”
Quoting Judge Denman, the author continues in the same section :
“A corporation which, as such, has no such duties, can not be guilty in these cases; but it may be guilty, as a body corporate, of commanding acts to be done to the nuisance of the community at large.”
Section 180, et seq., McClain on Criminal Law, Yol. 1, are to the ^ame effect.
The prevailing opinions and decisions of state and federal courts for the last quarter of a century are to the effect that a corporation may be indicted.
Counsel for the defendant, in addition to the 24 O. S., supra, cite a case from the Supreme Court of Tennessee, Standard Oil Co. et al v. State of Tennessee, reported in 10 L. R. A. (N. S.), 1015, which was a prosecution brought under the Tennessee antitrust act, which is very similar to the Ohio anti-trust act. The opinion of the court, appearing in the syllabus, is as follows:
“No fine can be imposed upon a corporation under a statute making it unlawful for any person or corporation to contract in restraint of competition, an"d providing that in case of a guilty corporation its charter shall be forfeited or its right to do business annulled, that a guilty person or persons shall be fined or imprisoned, and that the guilty corporation or person shall return to the person injured the consideration received for property the sale of which is controlled by the combination.”
Clearly the construction of any statute must be guided by the intention of the Legislature in enacting the same. In the Tennessee case last cited, the following language appears:
“The fundamental rule of construction of all instruments, is that the intention shall prevail, and for this purpose the whole of the instrument will be looked to. The real intention will always prevail over the literal use of terms. Legislative acts fall within the rule, and it has been well said that a thing which is within the letter of a statute is not within the statute unless *443 it be within the intention of the law-makers. A thing which is ■within the intention of the makers of a statute is as much within the statute as if it were within the letter. And a thing which is within the letter of the statute is not within the statute unless it be within the intention of the makers, and such a construction ought to be put upon it as does not suffer it to be included. ’ ’
Numerous cases .are cited in support of this.well known and universal regarded doctrine of construction.
The court, in construing the Tennessee code upon that proposition, used the following language ' (p. 1024) :
“The question, then, is whether the word ‘person’ is used in this statute to include both natural persons and artificial persons, or corporations. It is conceded, as it must be,- that the word ‘person’ in a statute may and oftentimes does include corporations. We think this must be held to be so, under Section 62 of Shannon’s Code, declaring that the word ‘person’ includes a corporation. The general provisions of chapter 2 of the code, where this section is found, there declared to be applicable to the whole code, apply not only to the code as originally enacted, but to all amendments thereof, which include all statutes passed since its enactment, in the absence of a contrary purpose expressed in the statutes themselves.”.
And the Tennessee court, in construing their statute, held that it was the intention of the Legislature not to visit a criminal penalty upon the corporation.
What was the intention of the Legislature of Ohio in the enactment of this Valentine anti-trust law? Manifestly a great” mischief was to be legislated against, and the mischief was the control of production and prices of the commodities of life by combinations in illegal restraint of trade, whereby the rich and powerful might obtain unfair and iniquitous advantage over the poor and weak. It is notorious that the big business of the country in production and trade is in the hands of corporations —particularly the hands of big corporations. The individual today, as a natural .person, does not produce and control to exceed one per cent, of the world’s commodities. His activity and efficiency as producer and transporter to the world’s market, has been practically and substantially eliminated.- He is simply *444 the officer, agent, employe or servant of the corporation; and if the corporation is not amenable and responsible to and punishable by the state and nation for the doing of such mischief, the individual will, in addition thereto, become merely the slave of such corporation.
It is hardly to be presumed that the General Assembly of Ohio, in enacting this law to provide against the mischief of trusts’ arbitrarily controlling production and prices, could have intended to relieve the corporation, doing ninety-nine per cent, of the mischief, from punishment by penalty of law, and legislate against only the individual doing one per cent, of the mischief. However, the Legislature has made its intention in that respect very clear in the last section of the act, which reads as follows:
Section 4427-12—Sec. 12. “The word ‘person’ or ‘persons,’ whenever used in this act, shall be deemed to include corporations, partnerships and associations existing under or authorized by the state of Ohio, or any other state, or any foreign country.”
This Section 12 must be read into every other section of the Yalentine anti-trust act.
As bearing upon the intention of the Legislature to exclude “corporations” from the provisions of this act, so far as Section 4 is concerned, it is urged that the Yalentine anti-trust act, having provided, under favor of Section 2 of that act, for a prosecution by the Attorney-General or the prosecuting attorney of the county, of proper suits or quo warranto proceedings in courts of competent jurisdiction, where any such corporation exists or does business, or has a domicile, for the forfeiture of its charter, rights, franchises or privileges, and powers exercised by such corporation or association, and for the dissolution of the same under the general statutes of the state for any violation of the provisions of this act by such corporation, that this penalty, being in effect a death penalty, is exclusive, and was all that the Legislature intended to be visited upon any offending corporation.
The Legislature, evidently, did not think this would in all 'cases be sufficient, and, hence, they provided for criminal pros- *445 edition, and in order that there might be no question about anyone penalty excluding the visitation of any other penalty they incorporated the following section in the act, which reads:
Section 4427-9—Sec. 9. “That the provisions hereof shall be held cumulative of each other and of all other laws in any way affecting them now in force in this state.”
From which it must follow that the proper officer may institute such criminal actions as may be advisable under and by virtue of the anti-trust law, and after suitable penalties shall have been imposed by our courts, the officers may further proceed, by action in quo warranto, for the forfeiture and surrender of the charter and the dissolution of the corporation.
It will be noted that both the Supreme Court of Ohio, in the fertilizer case, 24 O. S., supra, as well as the Supreme Court of Tennessee in the Standard Oil Co. ease, supra, limit the' term “person” to “natural person,” unless or in the absence of a contrary purpose expressed in the statute itself; both courts implying that the Legislature may provide that the “corporation” shall be included as well as the individual person.
It is not the province of judges and courts to defeat the obvious intention of the law-making body under the guise of judicial interpretation or construction; it is their business rather to give force and effect to the plain intent and provisions of the statute. There is too much judge-made law nowadays. When judges rightly understand and faithfully observe the law as it is, giving rightful force and effect to the plain, clear and complete terms and provisions of the art in accordance, not merely with the letter but the spirit of the act, they will add much to confidence in courts, the safety of society and the security of the state. Let them leave law-making, law-modifying and law-repealing to the legislative bodies, who a.re sworn to support the same Constitution and laws that the judges are sworn to support.
Laws are made to be observed, not violated. The people generally do obey them, interpreting them according to their plain and clear intention and meaning. If this interpretation is generally accepted by the many who observe the law, why should *446 courts not apply the same interpretation to the few who would defeat it?
The court therefore finds upon this question that the Legislature clearly and unmistakably intended to include, and did expressly include, the “corporation” within the criminal penalties of the law; and, therefore, there is neither right nor room for judicial interpretation. The law is its own interpreter. It is free from doubt and ambiguity; and if the court should so construe it as to mean anything else than what the clear and obvious terms of' the statute mean to the average man, it would be lawmaking and law-repealing under the guise of judicial interpretation. Any other finding would be neither more nor less than legal legerdemain.
The second objection, that of unconstitutionality of Section 4 of this act, discriminating as to penalties by reason'of the fact that imprisonment may be imposed upon the individual, but can not from the nature of the case be imposed upon the corporation.
It is unusual for complaint to be entered upon the ground of discrimination, when the discrimination is in favor of the complainant, and the rule is generally well settled that such a grievance must be left to a person actually aggrieved. The corporation finds itself in the situation of saying, in effect, I can not be held to the provisions of this act because you can not imprison me as you can imprison an individual; hence you can not fine me. The statement of the proposition is its own best answer.
No court has yet gone so far as to hold that in .all cases the same duties, rights or prerogatives that shall attach to persons must attach likewise to corporations, and vice versa. The corporation is in a class by itself, and courts have universally recognized such a class. They have gone much further, and recognized the right of the Legislature to classify and sub-classify corporations, and formulate one class of legislation applying to public corporations; .another class of legislation applying to private corporations, subdividing the legislation as to private corporations, making a certain code apply to guasipublic, and another code apply to those that .are wholly private corporations, and no court has so far declared such classification, *447 so long as it was reasonable and founded upon substantial differences of condition and not mere arbitrary and artificial distinctions, unconstitutional and void.
A case directly in point, to which the court has been referred since the hearing upon this motion, is entitled United States v. Union Supply Company, decided November 8th, 1909, by the Supreme Court of the United States. Mr. Justice Holmes de-. livered the opinion of the court. Seldom it is that two cases so completely parallel each other on all matters in controversy as the ease last cited and the case at bar. The Supreme Court of the United States held against the defendant company upon all contentions. Discrimination in punishment is here treated as a matter solely in the discretion of the court, and that discrimination is in nowise affected by the fact that imprisonment can not be visited upon the corporation. This inability to visit imprisonment upon the corporation is not regarded with any favor by the court as ground for impairing in any wise the validity or constitutionality of the law.
The motion is overruled.